**FILED UNDER SEAL**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

    -v.-

ROBERT COPLAN, MARTIN NISSENBAUM,
RICHARD SHAPIRO, BRIAN VAUGHN,
DAVID L. SMITH, and CHARLES BOLTON,

    Defendants.

(S-1) 07 Cr. 453 (SHS)

---

**CHARLES BOLTON'S CORRECTED REPLY MEMORANDUM
IN SUPPORT OF THE MOTION TO TRANSFER VENUE
UNDER FEDERAL RULE OF CRIMINAL PROCEDURE 21(b)**

Howard E. Heiss
Mark A. Racanelli
Shiva Eftekhari
O'MELVENY & MYERS LLP
Times Square Tower
7 Times Square
New York, NY  10036
(212) 326-2116

*Attorneys for Defendant Charles Bolton*

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................................ 1

I. THE UNDISPUTED FACTS SHOW THAT MR. BOLTON'S RESIDENCE IN MEMPHIS STRONGLY FAVORS A TRANSFER. ................ 2

II. THE GOVERNMENT DISPUTES NONE OF THE FACTS WHICH SHOW THAT A NEW YORK TRIAL WOULD JEOPARDIZE MR. BOLTON'S BUSINESS. ............................................................................... 4

III. A TRANSFER WOULD NOT INCONVENIENCE THE WITNESSES. ............. 6

IV. THE EVENTS INVOLVING MR. BOLTON OCCURRED IN MEMPHIS. ........................................................................................................ 7

V. TRANSFER TO MEMPHIS WILL NOT RESULT IN DUPLICATIVE TRIALS .................................................................................................................. 9

VI. THE OTHER FACTORS ALSO FAVOR TRANSFER. ..................................... 10

CONCLUSION ............................................................................................................................ 10

# TABLE OF AUTHORITIES

Page

## CASES

United States v. Alter, 81 F.R.D. 524 (S.D.N.Y. 1979) ............................................................. 6

United States v. Aronoff 463 F. Supp. 454 (S.D.N.Y. 1978) ............................................. 5, 6, 8

United States v. Benjamin, 623 F. Supp. 1204 (D.D.C. 1985) .......................................... 5, 7, 10

United States v. Clark, 360 F. Supp. 936 (S.D.N.Y. 1973) ..................................................... 8, 9

United States v. Coffee, 113 F. Supp. 2d 751 (E.D. Pa. 2000) ..................................................... 7

United States v. Finkelstein, 526 F.2d 517 (2d Cir. 1975) ............................................................ 9

United States v. Haley, 504 F. Supp. 1124 (E.D. Pa. 1981) ........................................................ 2

United States v. Layne, No. 05 Cr. 87 (HB), 2005 WL 1009765 (S.D.N.Y. May 2, 2005) ................................................................................................................................. 6, 10

United States v. Martino, No. 00 CR 389, 2000 WL 1843233 (S.D.N.Y. Dec. 14, 2000) ...................................................................................................................... 2, 4, 6, 7, 10

United States v. McDermott, 245 F. 3d 133 (2d Cir. 2001) ......................................................... 9

United States v. Menashe, No. 90 Cr. 110 (LLS), 1990 WL 121525 (S.D.N.Y. Aug. 16, 1990) ............................................................................................................................ 8, 10

United States v. Ohran, No. 99 Cr. 142 (JSM) 2000 WL 620217 (S.D.N.Y. May 12, 2000) ................................................................................................................................. 1, 6

United States v. Posner, 549 F. Supp. 475 (S.D.N.Y. 1982) ........................................................ 4

United States v. Russell, 582 F. Supp 660 (S.D.N.Y. 1984) ............................................... 6, 7, 8

United States v. U.S. Steel Corp., 233 F. Supp. 154 (S.D.N.Y. 1964) ......................................... 3

United States v. Valdes, No. 05 Cr. 156 (KMK), 2006 WL 738403 (S.D.N.Y. Mar. 21, 2006) ............................................................................................................................. 7, 8

## PRELIMINARY STATEMENT

The government's opposition to Charles Bolton's motion to transfer his case to his home in Memphis, Tennessee disputes nearly none of the facts that show a transfer is in the interest of justice. The government does not dispute that

**Redacted**

that a trial of several weeks in his home city rather than one of many months in New York would make a critical difference to his business; that nearly everything the Indictment alleges Mr. Bolton did in furtherance of the conspiracy, he did in Memphis; that most of the government's witnesses who know Mr. Bolton and all of Mr. Bolton's character witnesses live in Memphis; that the majority of the other witnesses do not live in New York, which is apparently a convenient forum principally for the IRS agents and prosecutors; and that Mr. Bolton had nothing to do with three of the five transactions charged in the Indictment, and thus most of the evidence introduced in a joint trial would have little, if anything, to do with him.

Those facts cast in stark relief the answer in this case to the single, overriding question at issue in deciding whether to grant a transfer under Rule 21(b): regardless of where the government chose to file its Indictment, "[w]here, in fairness, should the trial take place" for a defendant who lives far away? United States v. Ohran, 2000 WL 620217, at *2 (S.D.N.Y. May 12, 2000) (Martin, J.) (emphasis added). Fairness is the touchstone, and on that score the government has little to say.

**Redacted**

1

**Redacted**

And the government's position—held in every case—that one trial rather than two would be more efficient and convenient to the prosecutors and agents yields to the demonstrable and undisputed harm Mr. Bolton would suffer from a long trial far from his home.

I.

**Redacted**

Redacted

3

Redacted

## II. THE GOVERNMENT DISPUTES NONE OF THE FACTS WHICH SHOW THAT A NEW YORK TRIAL WOULD JEOPARDIZE MR. BOLTON'S BUSINESS.

The government does not dispute that Mr. Bolton's business has suffered setbacks and depends heavily on his personal involvement since it employs just two other people, only one of

whom is a trader. There is no dispute that Mr. Bolton closely monitors the currency trading he conducts because it involves his own money and that he is integrally involved in the only other aspect of his business—managing a start-up venture in China. Nor is there any dispute that if Mr. Bolton had to spend months in New York, responsibility for his business would fall to one employee, Greg Firtik. Mr. Bolton explained why it would be nearly impossible for Mr. Firtik to handle both businesses himself for months: Mr. Firtik has never done so before, he likely will not be comfortable making certain decisions by himself—especially with respect to trading Mr. Bolton's money—and there will be times he will be unable to pay attention to the trading because of the China venture. (Decl. of Charles Bolton at ¶¶ 49-53.) We have also shown that a much shorter trial in Memphis would allow Mr. Bolton to remain more involved in his business, which could mean the difference between its success and failure when decisions need to be made quickly. (Id. at ¶ 54.) The government offers no facts to dispute any of that evidence either.

Indeed, the government concedes important ground by acknowledging that a Memphis trial will allow Mr. Bolton a "marginally greater ability" to carry out his "regular business activities." (Gov't Mem. at 41.) The government's point was that Mr. Bolton would not have much additional time to tend to his business even if the trial were in Memphis, but courts have recognized that small businesses like Mr. Bolton's, which rely on an owner's personal involvement to steer through tough times, would benefit from any additional time, however little, that the defendant can devote if tried in his or her home district. United States v. Aronoff, 463 F. Supp. 454, 459 (S.D.N.Y. 1978) (for a struggling company that "depends so much on personal involvement, even a few hours each weekday plus weekends could make a substantial difference."); United States v. Benjamin, 623 F. Supp. 1204, 1214 (D.D.C. 1985) (while a trial would be disruptive anywhere, "margin of time and expense" in home district favors transfer).

5

### III. A TRANSFER WOULD NOT INCONVENIENCE THE WITNESSES.

The government does not dispute that the majority of its witnesses who worked with Mr. Bolton live in Memphis, and that the remainder of those witnesses live outside New York. Nor does it dispute that every one of the 20 potential character witnesses Mr. Bolton has identified for the Court—critical witnesses in a case where the central issue will be Mr. Bolton's intent—live in Memphis. The presence of key government and defense witnesses in the defendant's home state is powerful reason to grant a transfer. See United States v. Layne, 2005 WL 1009765, at *3 (S.D.N.Y. May 2, 2005); Martino, 2000 WL 1843233, at *6; Aronoff, 463 F. Supp. at 458-59; United States v. Russell, 582 F. Supp 660, 663 (S.D.N.Y. 1984); Ohran, 2000 WL 620217, at *3.

Without specifying what the witnesses will say or how many people it means, the government asserts that it will call "a number of witnesses who reside in New York." (Gov't Mem. at 38.) But, tellingly, it never claims that the majority of the witnesses in the case live in New York. Rather, it simply states that the "overwhelming majority of witnesses ... will come from outside Tennessee." (Gov't Mem. at 38.) It is not Mr. Bolton's burden, however, to show that the majority of witnesses are located in Tennessee; it is sufficient that many of the key witnesses do live in Tennessee and most of the remaining ones do not live in New York. Judge Weinfeld's decision in United States v. Alter, 81 F.R.D. 524 (S.D.N.Y. 1979) is squarely on point. There, as here, the government said that it planned "to call a number of New York witnesses without specification as to the nature of their testimony." Id. at 526. The "majority of the witnesses for both the government and the defendants," however, did not reside in New York, but lived either in the defendants' home district or somewhere outside New York. Id. at 527. The court ruled that those facts "strongly tilt[ed] in favor of a transfer." Id.

The government argues that a Memphis trial would be inconvenient to testifying federal

6

agents, but that is not a significant consideration.  Courts have made clear that "[t]he United States is ubiquitous" and "government-employee witnesses … have nation-wide responsibilities."  United States v. Benjamin, 623 F. Supp. 1204, 1212-13 (D.D.C. 1985) (transferring venue in tax case and observing that "[t]he IRS and the Department of Justice are, or should be, 'at home' [in any place] … in which a federal court sits.").

The government is also incorrect when it argues that Mr. Bolton must show that the witnesses he plans to call "would be unable to testify … as a result of the trial taking place in New York."  (Gov't Mem. at 38.)  Courts have transferred cases where the defendant makes a showing that defense witnesses would be inconvenienced by having to travel to New York.  See United States v. Valdes, 2006 WL 738403, at *5 (S.D.N.Y. Mar. 21, 2006); Martino, 2000 WL 1843233, at *6; Russell, 582 F. Supp. at 663; United States v. Coffee, 113 F. Supp. 2d 751, 755 n.5 (E.D. Pa. 2000) (requiring showing that witnesses cannot attend trial "would put an impermissible thumb on the balance of the Platt test in favor of keeping the case where the Government brought it.").  It would be much more inconvenient for Mr. Bolton's character witnesses, all of whom live in Memphis and most of whom run family businesses or have limited means, to attend a trial in New York rather than Memphis.

## IV.   THE EVENTS INVOLVING MR. BOLTON OCCURRED IN MEMPHIS.

There is no dispute that nearly everything the government claims Mr. Bolton did that is relevant to whether he acted with fraudulent intent occurred in Memphis.  This includes allegations that he:  operated the companies that implemented CDS and Add-On; signed key agreements and sent and received correspondence relating to those transactions; participated in his own CDS transactions; sent payments to defendants Smith and Vaughn; gave testimony to the IRS; and submitted to the IRS documents and other information.  (Indictment ¶¶ 12, 37, 43, 47, 49, 50, 52, 84-90, 97(s), 97(x).)

While the government says that "many of the most significant events" took place in New York, its own recitation of the facts does not support that argument. (Gov't Mem. 39.) The government cites a few examples of these "significant" events, but most are explicitly limited to defendant Vaughn or involve conduct Mr. Bolton indisputably had nothing to do with, such as preparing allegedly false documents in New York. (Id.) The only New York-specific conduct involving Mr. Bolton the government points to concerns allegations that he reached out from Memphis to work with New York banks, and called and met with co-conspirators in New York. (Id.) But courts have repeatedly held that such episodic contact with New York is not a reason to keep a case in this district when the events "at issue"—those central to whether the defendant acted with fraudulent intent—occurred outside New York, as here. Aronoff, 463 F. Supp. at 459 (in fraud prosecution, defendant's acts in the district "are less likely to be in issue than the knowledge and intent with which [he] acted in Michigan"); United States v. Menashe, 1990 WL 121525, at *2 (S.D.N.Y. Aug. 16, 1990) (phone calls into New York not a sufficient New York connection); Russell, 582 F. Supp. at 661-62 (bank transactions in and phone calls to New York not sufficient).

The government's remaining argument—that the conspiracy involves events that are "national in scope"—also is not a reason to keep the case here. (Gov't Mem. 39-40.) Many alleged conspiracies have some national dimension. Courts look past such generalizations and focus on where the moving defendant's conduct allegedly took place. Valdes, 2006 WL 738403, at *6 (defendants' home district was the "central location" of their conduct, even though alleged enterprise was "national in scope"); United States v. Clark, 360 F. Supp. 936, 942-43 (S.D.N.Y. 1973) (transferring case where "great majority of the events and transactions" involving moving defendants' business occurred outside New York). Here, that is Memphis.

8

## V. TRANSFER TO MEMPHIS WILL NOT RESULT IN DUPLICATIVE TRIALS.

The government asserts that a transfer would result in "an almost complete repetition of the main trial" (Gov't Mem. at 45.), but here again, the undisputed facts lead to the opposite conclusion. The government concedes that Mr. Bolton was involved in only two of the five charged transactions. (Gov't Mem. at 37-38, 45-46.) It acknowledges that he "was not involved in COBRA or PICO," (Id. at 45.), and never claims—because it cannot—that he had anything to do with Tradehill, a private tax deal involving some of the other defendants. Because evidence relating to three-fifths of the case would not be relevant to any trial of Mr. Bolton alone, a separate trial plainly would not completely repeat the New York trial.

Moreover, putting aside whether Mr. Bolton is even properly included in a conspiracy which charges these other transactions—since the Second Circuit has held that conspiracies are defined not by their general purpose but by an agreement to that purpose (United States v. McDermott, 245 F. 3d 133, 137-38 (2d Cir. 2001))—the government never explains, as a practical matter, why it would want or need to introduce evidence of deals Mr. Bolton had nothing to do with in a separate trial against him. The reality is that it would not.

To be sure, there will be some overlap in some of the evidence, especially with respect to background witnesses, as the government notes. But that is almost always true, as one case the government itself relies on points out. See United States v. Finkelstein, 526 F.2d 517, 524 (2d Cir. 1975) ("duplication of proof is often inevitable in situations meriting separate trials."). And courts have held that any evidentiary overlap is not a strong consideration when the other facts demonstrate that a case should be transferred in fairness. See Clark, 360 F. Supp. at 946 (transferring trial of five of eight defendants on finding that risk of duplication was "outweighed by the strong considerations of fairness with respect to those seeking transfer").

9

## VI. THE OTHER FACTORS ALSO FAVOR TRANSFER.

There is no dispute that Mr. Bolton would face a significantly greater financial burden if the trial was held in New York, and courts have granted transfers under those circumstances. Layne, 2005 WL 1009765, at *5; Martino, 2000 WL 1843233, at *7. While the government bridles at the expense of relocating the prosecution team to Memphis, it is their "duty and practice ... to try cases in any federal court in the United States, [and] ... [i]n any federal district, the government lawyers have a built-in office, complete with local logistical support from parallel local staffs of the U.S. Attorney, IRS and the FBI." Benjamin, 623 F. Supp. at 1212. And, because most of the witnesses who worked with Mr. Bolton live in Memphis, the government would not incur significant witness expenses in a separate trial.

The government also has not demonstrated, as it claims, that docket conditions "weigh[] overwhelmingly against transfer." (Gov't Mem. at 43.) While the government asserts that a transfer will cause "significant additional delay," it is undisputed that the docket conditions in Memphis will allow for a quick trial date.

## CONCLUSION

For the foregoing reasons, we respectfully request that the Court transfer Mr. Bolton's trial to the Western District of Tennessee pursuant to Federal Rule of Criminal Procedure 21(b).

Dated: June 17, 2008  
      New York, New York

Respectfully submitted:  
O'MELVENY & MYERS LLP

Howard E. Heiss  
Mark A. Racanelli  
Shiva Eftekhari  
7 Times Square  
New York, New York 10036  
Telephone: (212) 326-4403  
Facsimile: (212) 326-2061  
E-Mail: mracanelli@omm.com

*Attorneys for Charles Bolton*

**FILED UNDER SEAL**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>-v.-<br><br>ROBERT COPLAN, MARTIN NISSENBAUM, RICHARD SHAPIRO, BRIAN VAUGHN, DAVID L. SMITH, and CHARLES BOLTON,<br><br>Defendants. | (S1) 07 Cr. 453 (SHS)<br><br>**CERTIFICATE OF SERVICE** |

I, SHIVA EFTEKHARI, hereby certify that on June 17, 2008, I served via Federal Express and e-mail true and correct copies of Charles Bolton's Corrected Reply Memorandum in Support of the Motion to Transfer Venue under Federal Rule of Criminal Procedure 21(b) on the counsel listed below:

    Deborah Landis, Esq.
    Lauren Goldberg, Esq.
    Marshall A. Camp, Esq.
    U.S. Attorney's Office
    Southern District of New York
    One St. Andrew's Plaza
    New York, New York 10007

    Paula M. Junghans, Esq.
    Andrew Goldfarb, Esq.
    Zuckerman Spaeder LLP
    1800 M Street NW, Suite 1000
    Washington, D.C. 20036

    Brian D. Lindner, Esq.
    Isabelle A. Kirshner, Esq.
    Clayman & Rosenberg
    305 Madison Avenue, Suite 1301
    New York, New York 10165

John Joseph Tigue, Jr.
Kristy Watson Milkov
Morvillo, Abramowitz, Grand, Iason, Anello & Bohrer, P.C.
565 Fifth Avenue
New York, New York 10017

James B. Tucker, Esq.
Peter H. Barrett, Esq.
Butler, Snow, O'Mara, Stevens & Canada, PLLC
P.O. Box 22567
Jackson, MS 39225

Paul B. Bergman, Esq.
Paul B. Bergman, P.C.
950 Third Avenue
New York, New York 10022


Dated: June 17, 2008
       New York, New York

/s/ Shiva Eftekhari
Shiva Eftekhari